UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO S.,

          Plaintiff,

     v.                                      **DECISION AND ORDER**

                                                           20-CV-1014S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

        1.       Plaintiff Antonio S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits under Title II of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.       Plaintiff protectively filed his application with the Social Security Administration on October 14, 2016.  Plaintiff alleged disability beginning April 29, 2016, due to cervical and lumbar degenerative disc disease, left wrist impairments (from an accident), obesity, asthma, and bipolar disorder (R. at 18, 21).  Plaintiff's application was denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.       On June 7, 2019, ALJ David Neumann held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Pat Green appeared and testified.  (R.[2] at 37-77, 15, 342.)  At the time of the hearing, Plaintiff was almost 48 years

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

old and had one year of college. She worked as factory worker (light exertion work), forklift operator (medium), and she worked as a night auditor and bill collector but not long enough to be substantial gainful activity (R. at 26, 27, 29).

4. The ALJ considered the case *de novo* and, on September 12, 2019, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

5. Plaintiff moved for summary judgment[4] (Docket No. 18) and Defendant moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Docket No. 21). Plaintiff did not file a reply. This Court takes the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

---

[3]The ALJ's September 12, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

[4]This Court will treat this Motion as a Motion for Judgment on the Pleadings, technically the proper vehicle under the Social Security Act for a decision on the merits of the Complaint, Wills v. Comm'r, No. 19CV428, 2020 WL 502452, at *1, n.3 (W.D.N.Y. Jan. 31, 2020) (Skretny, J.); see 42 U.S.C. § 405(g).

Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not,

3

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity from April 2016 through December 2017 and from December 2018 through

4

May 2019.  (R. at 17.)  At Step Two, the ALJ found that Plaintiff has the following severe impairment:  cervical and lumbar degenerative disc disease, left wrist impairments, obesity, asthma, and bipolar disorder (R. at 18).  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 19-20.

       12.    Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that Plaintiff can lift and carry up to 10 pounds frequently, 15 pounds occasionally; requires the ability to sit or stand once every 30 minutes for one minute at a time; can occasionally climb, balance, stoop, kneel, crouch, or crawl; capable of "low stress" work, defined as involving occasional changes in his work, setting; avoid concentrated pollutants and temperature extremes (R. at 21).

       13.    At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work as factory worker and forklift operator.  (R. at 26.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 27.)  Since Plaintiff has additional limitations to performing light work, the ALJ asked the vocational expert to opine what a hypothetical claimant could perform.  Taking a hypothetical claimant with the same age, education, employment experience, and RFC, the expert opined the claimant could perform jobs like small products assembler, hand packagers, and odd-piece checker (all light exertion work) (R. at 27).  Accordingly, the ALJ found that Plaintiff was not disabled from the April 29, 2016, onset date to the date of decision, September 12, 2019.  (R. at 28.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ erred in finding Plaintiff was not credible as to her testimony about her pain or her ability to engage in substantial employment from April 2016 through December 2017 (Docket No. 18, Pl. Memo. at 14-17, 17-18). Plaintiff claims the ALJ erred in evaluating the combination of impairments (id. at 17-20). Since the findings of the RFC were erroneous, the ALJ also erred in relying upon these facts in formulating facts for the hypotheticals (id. at 20-23, 22). Plaintiff complains the ALJ disregarded the opinions of his treating physicians, Drs. A. Marc Tetro and John Callahan (id. at 23-24). For the reasons that follow, these arguments are rejected.

15. A finding of Plaintiff lacked credibility as to his pain must be supported by substantial evidence, Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979) (id. at 14). To do this, the ALJ needs to consider the objective medical evidence and factors of his daily activities; the location, duration, frequency, and intensity of his pain; factors that precipitate or aggravate the pain; the type, dosage, effectiveness, and side effects of medication Plaintiff received; other forms of treatment; other measures Plaintiff used to relieve pain or other symptoms, 20 C.F.R. § 404.1529(c) (id. at 14-15).

16. Plaintiff argues that the ALJ here did not provide explicit and specific reasons for rejecting his testimony (id. at 16).

17. Defendant argues that the objective medical records support the ALJ's consideration of Plaintiff's subjective complaints (Docket No. 21, Def. Memo. at 21-25; R. at 21-22).

18. There is substantial evidence for qualifying Plaintiff's subjective complaints as done by the ALJ.

6

19. For example, Plaintiff's examinations showed only mild discomfort during range of motion movements (R. at 21-22, 786, 790, 798, 807-08; Docket No. 21, Def. Memo. at 21). Dr. David Brauer examined Plaintiff on February 21, 2017, and observed that Plaintiff had full range of motion in his wrists, full grip strength, and possessed intact hand and finger dexterity (R. at 22, 1107-08; Docket No. 21, Def. Memo. at 22).

20. Thus, Plaintiff's Motion (Docket No. 18) on this ground lacks merit.

21. Plaintiff next argues that the ALJ erred in finding that he engaged in substantial employment from April 2016 to December 2017 (Docket No. 18, Pl. Memo. at 17-18). Plaintiff was a college student during this period and submitted documentation from the student portal at Erie Community College to show he was not substantially employed. He explains that the money received during that period was refunded federal student aid (id. at 17; R. at 351, 345-46, 350). The ALJ, however, found Plaintiff was self-employed during that time (R. at 17, 207).

22. The ALJ rejected the Erie Community College portal report because it did not name Plaintiff or give pertinent dates (R. at 18, 350-51). After the hearing, the ALJ asked Plaintiff to produce his tax returns (R. at 17-18, 200), but he did not do so (R. at 18; Docket No. 21, Def. Memo. at 27).

23. Plaintiff has the burden of proof that he did not engage in substantial gainful activity at Step One, see Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).

24. Since disability hearings are nonadversarial proceedings, the ALJ "generally has an affirmative obligation to develop the administrative record," Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Burgess, supra, 537 F.3d at 128. The ALJ met this obligation by requesting production of these tax returns after the hearing (R. at 17, 200).

The ALJ need not subpoena Plaintiff's tax records, especially since Plaintiff does not request assistance from the ALJ to obtain these records, see 20 C.F.R. § 404.1512(b)(1) (but cf. id.), and Plaintiff clearly had them in his possession (evidenced by their production in his Motion, Docket No. 18, Pl. Atty. Decl. Exs. 1, 2).

25.    The question is whether the ALJ was presented with substantial evidence of Plaintiff's earnings. The evidence must be complete and detailed enough to allow the ALJ to determine disability, 20 C.F.R. § 404.1512(a)(2), and here his work experience and earnings, id § 404.1512(a)(1)(iv), (vii).

26.    Submission of the tax returns (id.) with his present Motion is insufficient; these returns should have been submitted to the ALJ to meet the evidentiary burden. This Court acts upon the pleadings and the transcript of the record, 42 U.S.C. § 405(g) (sentence four), and cannot make findings of fact to supplement those of the Commissioner, see Torres v. Secretary of Health, Ed. and Welfare, 475 F.2d 466, 469 (1st Cir. 1973); Estep v. Richardson, 459 F.2d 1015, 1016 (4th Cir. 1972). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive," 42 U.S.C. § 405(g) (fifth sentence).

27.    The unlabeled, undated, and barely named ("Welcome Antonio!") printout from the Erie Community College portal (R. at 351, see R. at 350) does not meet his burden denying that he earned income beyond the substantial gainful activity limits in 2016 or 2017. The ALJ was correct in including this apparent college aid refund as earned income to establish substantial gainful activity.

28.    These returns also are not new evidence that may be presented for the first time to this Court. The ALJ was aware of their existence (hence the post-hearing request

for them).  Plaintiff also lacks good cause for not producing them when requested.  Under the Second Circuit's decision in Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (Docket No. 21, Def. Memo. at 28), this Court cannot consider these returns.

29.     Plaintiff's Motion (Docket No. 18) on this ground is denied.

30.     Next, Plaintiff contends that the ALJ did not consider the combination of Plaintiff's impairments in determining his disability (id., Pl. Memo. at 19-20).  The ALJ needed to consider the combination of all impairments without regard to whether any single impairment would be disabling, 20 C.F.R. § 404.1520(a)(4)(ii) (id. at 19).

31.     Defendant responds that the ALJ considered the impairments in combination in formulating the RFC (Docket No. 21, Def. Memo. at 16; R. at 18-20).

32.     Plaintiff counters that his impairments were not considered at Step Five, in not considering in combination his exertional and nonexertional impairments (Docket No. 18, Pl. Memo. at 19).  Resting upon the credibility arguments discussed above, Plaintiff argues that ALJ discounted the nonexertional impairments and failed to consider his subjective complains of pain (id. at 19-20).

33.     The ALJ sought the advice of the vocational expert based upon Plaintiff's ability to perform light work was "impeded by additional limitations" (R. at 27).  Although the ALJ did not specify which limitations compelled the opinion of an expert, this is consideration in combination of all of Plaintiff's impairments.

34.     Defendant argues that Plaintiff's contention in fact addresses the accuracy of the RFC rather than the basis for obtaining a vocational expert's opinion (Docket No. 21, Def. Memo. at 16-17).  Further, Plaintiff points to no evidence for inclusion of the impairments Plaintiff claims were excluded from the RFC (id. at 17-19).

35.    Plaintiff next argues that the ALJ improperly disregarded the opinions from his treating doctors (Docket No. 18, Pl. Memo. at 23-24).

36.    Defendant, in part, responds that Plaintiff merely seeks to have this Court reweigh the evidence (Docket No. 21, Def. Memo. at 15).

37.    Plaintiff erroneously applied the post-March 2017 standard for evaluating medical opinions (Docket No. 18, Pl. Memo. at 23) for his application of October 2016, 20 C.F.R. § 404.1527; see Susan B. v. Comm'r, No. 20CV546, 2021 WL 326623, at *3 (W.D.N.Y. July 30, 2021) (Wolford, C.J.).

38.    Rather than the persuasiveness of a medical opinion, cf. 20 C.F.R. § 404.1520c(c), these opinions are weighed under several factors (the examining relationship, treatment relationship, supportability, consistency with the record as a whole, specialization, and other factors, 20 C.F.R. § 404.1527(c)).  Plaintiff's objection turns on the supportability of the opinions.

39.    The ALJ found that Drs. A. Marc Tetro and John Callahan did not include detailed examination reports in support of their disability opinions (R. at 22).  Plaintiff denies this because each doctor had detailed reports that supported their opinions (Docket No. 18, Pl. Memo. at 23-24).

40.    On March 23 and June 28, 2017, anticipating surgery, Dr. Tetro reported that Plaintiff was disabled due to orthopedic problem (R. at 1138, 1331, 22).  Plaintiff cites to treatment notes from Dr. Tetro (R. at 787, 791, 800, 804, 808, 1141, 1343; Docket No. 18, Pl. Memo. at 3-4, 6-9).

41.    The ALJ observed from Dr. Callahan's examination of August 9, 2017, that Plaintiff had normal range of motion for the left wrist, milder tenderness but within normal

limits (R. at 1506-07, 22). Plaintiff then agreed to left wrist arthroscopy and debridement with ganglion excision (R. at 1506, see R. 1517-19).

42. After this operation, Plaintiff was under work restriction (R. at 1509, 1513; Docket No. 18, Pl. Memo. at 9). On October 26, 2017, Dr. Callahan opined Plaintiff could increase the use of his surgically repaired hand as tolerated but remain out of work (R. at 1513). On January 28, 2018, Dr. Callahan evaluated Plaintiff's left hand and that he felt fine but noted his right dorsal hand had swollen twice since a prior visit (R. at 1786, 1788; Docket No. 18, Pl. Memo. at 9-10).

43. These doctors noted temporary impairment due to and following Plaintiff's surgery. The ALJ thus had substantial evidence for the degree of supportability he found for Drs. Tetro and Callahan's opinions. Plaintiff's Motion (Docket No. 18) on this ground is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Summary Judgment (Docket No. 18) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 21) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:  March 8, 2022
        Buffalo, New York

                                    s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                    United States District Judge